IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| NOLAN ANTHONY MYERS ) | |
| ) | |
| v. ) | No. 2:12-0017 |
| ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To:     The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's application for disability insurance benefits and supplemental security income, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 17), to which defendant has responded (Docket Entry No. 21). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 11),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

In 2004, plaintiff filed applications for disability benefits, alleging the onset of disability as of June 30, 2004. (Tr. 86) After ultimately being determined by the SSA to be

---

[1]Referenced hereinafter by page number(s) following the abbreviation "Tr."

not disabled, plaintiff sought judicial review of that determination. While this review was pending, in July 2008, plaintiff filed new applications for benefits. (Tr. 24) He again alleged the onset of disability as of June 30, 2004. (Tr. 16)

In February 2009, this Court completed its review of the final agency decision on plaintiff's original applications and ordered the case remanded to the SSA for further administrative proceedings. In remanding the matter to the Administrative Law Judge (ALJ) level, the SSA's Appeals Council vacated the original ALJ decision and ordered the ALJ to consolidate the original and later-filed applications for hearing and a new decision. (Tr. 100-02)

On remand, a hearing was held before the ALJ. (Tr. 65-82) By decision dated May 13, 2010, the ALJ again determined that plaintiff was not disabled. (Tr. 110-22) Plaintiff sought Appeals Council review, whereupon the Appeals Council assumed jurisdiction, vacated the ALJ's May 13, 2010 decision, and remanded the matter for further consideration by a new ALJ. (Tr. 130-33)

On remand from the Appeals Council, the new ALJ held a hearing on May 19, 2011 (Tr. 31-64), at which plaintiff appeared with counsel and gave testimony. Testimony was also received from an impartial vocational expert. After adjourning the hearing, the ALJ took the matter under advisement until August 2, 2011, when he issued a written decision that was partially favorable to plaintiff. (Tr. 15-25) That decision contains the following enumerated findings:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2008.

2. The claimant has not engaged in substantial gainful activity since the alleged

onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. Since the alleged onset date of disability, June 30, 2004, the claimant has had the following severe impairments: degenerative disc disease (DDD) of the cervical and lumbar spine (status-post cervical fusion) with symptoms of low back pain, hip pain, left arm and shoulder numbness and pain, bilateral knees and feet pain, feet numbness and neuropathy; depression/anxiety; and alcohol abuse, in alleged remission (20 CFR 404.1520(c) and 416.920(c)).

4. Since the alleged onset date of disability, June 30, 2004, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that prior to August 17, 2009, the date the claimant became disabled, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no more than occasional climbing, balancing, stooping, crouching, crawling and kneeling, but he could stand and/or walk up to six (6) hours in an 8-hour day and sit up to six (6) hours in an 8-hour day; with limitations such that he should not be required to do more than frequent reaching, handling, feeling, gross manipulation, fine manipulation with his left hand; and he would have mild restrictions in his abilities to understand, remember and carry out complex instructions; mild restrictions in his ability to make judgments on complex work-related decisions; mild to moderate restrictions in his ability to interact appropriately with the public and co-workers; and no to mild restrictions in his ability to interact appropriately with supervisors and respond appropriately to usual work situations and to changes in a routine work setting.

6. After careful consideration of the entire record, the undersigned finds that beginning on August 17, 2009, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he could stand and/or walk up to two (2) hours in an 8-hour day, sit up to four (4) hours in an 8-hour day, with no more than occasional climbing, balancing, kneeling, crouching and crawling; limited reaching in all directions (including overhead); avoidance of concentrated exposure to temperature extremes, noise, dust, vibration, humidity/wetness, hazards (machinery, heights, etc.), fumes, odors, dusts, gases, perfumes,

solvents/cleaners, and soldering fluxes; and avoidance of moderate exposure to cigarette smoke and chemicals; and he would have mild restrictions in his abilities to understand, remember and carry out complex instructions; mild restrictions in his ability to make judgments on complex work-related decisions; mild to moderate restrictions in his ability to interact appropriately with the public and co-workers; and no to mild restrictions in his ability to interact appropriately with supervisors and respond appropriately to usual work situations and to changes in a routine work setting.

7. Since June 30, 2004, the claimant has been unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

8. Prior to the established disability onset date, the claimant was a younger individual age 18-49. The claimant's age category has not changed since the established disability onset date (20 CFR 404.1563 and 416.963).

9. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

10. Prior to August 17, 2009, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on August 17, 2009, the claimant has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Prior to August 17, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404,1569a, 416.969, and 416.969a).

12. Beginning on August 17, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

13. The claimant was not disabled prior to August 17, 2009, but became disabled on that date and has continued to be disabled through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

14. The claimant was not under a disability within the meaning of the Social Security Act at any time through June 30, 2008, the date last insured (20 CFR 404.315(a) and 404.320(b)).

(Tr. 18-20, 22-24)

On January 26, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following summary of the record is taken from defendant's brief, Docket Entry No. 21 at 3-11.

Plaintiff was born in 1963 and has a high school education, via a 2001 GED (Tr. 234, 274). He had worked in the past as a foreman and a line mechanic and as a van driver (Tr. 268; see Tr. 282-85). He alleged that he became disabled as of June 30, 2004, when he was 42 years old (Tr. 16, 234). He alleged disability due to "[b]ad knees and feet, problems with elbow and lower back neck fused two vertebra missing, depression, anxiety" (Tr. 267; see Tr. 311, 314, 321, 324).

Plaintiff's insured status, for the purposes of Title II disability insurance benefits, expired after June 30, 2008 (Tr. 16). The relevant period of time in this case is from June 30, 2004 (when Plaintiff allegedly became disabled) through August 2, 2011 (the date of the ALJ's decision). This is the period of time addressed by the ALJ's decision which is the subject of this judicial review (Tr. 24).

*A. THE MEDICAL EVIDENCE*

According to the medical evidence, about 3 years before the relevant period, in October 2001, Plaintiff underwent back surgery and carpal tunnel release surgery on his right hand (Tr. 342-43). Post-surgery, Plaintiff was able to return to work and continued working until June 2004 (Tr. 268). There is no medical evidence between October 2001 and January 2007, except for MRI scans taken in March 2004 (Tr. 348-49). Those reports did not contain any formal diagnoses and did not indicate any functional limitations.

From January 2007 through July 2008, Plaintiff was treated by James Wall, M.D. (Tr. 364-91). The treatment notes indicated various complaints, including bilateral knee pain (Tr. 389), a benign polyp in the colon (Tr. 382, 437-38), left foot pain with negative x-rays (Tr. 374-76), skin problems (Tr. 369), and ringing in the ears (Tr. 368). Plaintiff was treated with medications, and no persistent functional limitations were mentioned.

In July and August 2007, Plaintiff was treated by Donald Pate, M.D., at DeKalb Community Hospital (Tr. 392-98). Plaintiff sought a colonoscopy and a vasectomy (Tr. 394). Ultimately, Plaintiff had surgery to remove a wrist tendon lesion and his benign colon polyp (Tr. 393). No functional limitations were mentioned.

From July 2007 through January 2008, Plaintiff received treatment from the Cumberland Back Pain Clinic (Tr. 399-452). Plaintiff first visited the Clinic on July 9, 2007, with complaints regarding his neck, shoulder, lower back, knees, feet, and left wrist (Tr. 441). He reported a history of multiple joint and low back pain for 15 to 20 years (Tr. 441). He was prescribed various medications (Tr. 443). On August 6, 2007, Plaintiff reported that his pain medication wore off after 2 to 3 hours (Tr. 437). Subsequent MRI scans of the lumbar spine revealed "mild dessication," "[m]inimal bulging," and a small protrusion in his

discs (Tr. 452). Plaintiff also had a vasectomy on August 20, 2007 (Tr. 433). By September 19, 2007, Plaintiff reported that the pain medications were "much better" and that "[s]hots work better" (Tr. 424). At that point, his diagnosis was of a lumbar protrusion, lumbar dessication, and myofascial pain syndrome ("MPS") (Tr. 425). On December 10, 2007 and January 8, 2008, it was reported that Plaintiff was "doing well on meds" and that he was going to transfer to another clinic (Tr. 411, 407). No persistent functional limitations were mentioned.

In December 2007, Plaintiff was examined by podiatrist David Song, D.P.M., at Dr. Wall's request, for his complaints of pain and numbness in his legs and feet (Tr. 546-48). Dr. Song diagnosed neuropathy and pain due to back problems (Tr. 548). Dr. Song prescribed medication and orthotics (Tr. 548). No functional limitations were mentioned.

In June 2008, Plaintiff was treated by Suneetha Nuthalapety, M.D., at the Regional Rehabilitation Center (Tr. 488-98). Dr. Nuthalapelty noted Plaintiff's complaints of back pain for 5 years and that he had been in a pain clinic but had been discharged due to insurance problems (Tr. 493). Dr. Nuthalapety diagnosed a chronic pain syndrome, lumbar degenerative disc disease, lumbago, a myofascial syndrome, and lower extremity paresthesias (Tr. 494). Dr. Nuthalapety prescribed medication, heat, exercise, physical therapy, and patient education (Tr. 494). No functional limitations were mentioned.

From June through August 2008, Plaintiff was seen at Cheer Mental Health Center (Tr. 453-73). On June 9, 2008, Plaintiff was referred by his family for an evaluation (Tr. 467-71). Plaintiff reported that he had been depressed for the past 7 to 8 months (Tr. 467). He said that had worked in the past as a mechanic and as a factory foreman (Tr. 468). The evaluating nurse diagnosed him a major depressive disorder and a post-traumatic stress disorder (Tr. 470). Medications and counseling were prescribed (Tr. 471). At that time,

Plaintiff "stated he has been attempting to get disability for four years" (Tr. 466). According to a July 8, 2008 progress note, Plaintiff was not having suicidal ideations while on his medication (Zoloft) and was sleeping all night (Tr. 462).

On July 15, 2008, Melvin Blevins, M.D., first saw Plaintiff as a "new patient," for complaints of tinnitus,[2] lumbar disc disease, and musculoskeletal pain (Tr. 358). Dr. Blevins noted that Plaintiff "continues to try to obtain his SS disability" (Tr. 358). After examination, Dr. Blevins diagnosed lumbar disc disease with chronic radicular pain, status post injury to the cervical spine requiring cervical fusion, osteoarthritis, gastroesophageal reflux disease, anxiety, depression, chronic pain syndrome, left ear tinnitus, and recurrent herpes simplex of the lip (Tr. 359). Dr. Blevins prescribed further testing, medications (Zantac, Flexeril, Acyclovir, Mobic, tinnitus meds), and to return in 1 month (Tr. 359). Dr. Blevins did not impose any functional limitations.

On July 22, 2008, Plaintiff was seen in a case management meeting where he recounted that he had not "worked since discectomy with neck fusion 4 yrs. ago and is in severe, chronic pain with neck, back, knees and legs from injuries sustained in 3 separate motorcycle accidents" (Tr. 461). He also reported that he "has been married 4 times and recently married high school sweetheart in Feb. 08" (Tr. 461). He had "2 young children, who live with his ex-wife," and his "[o]nly source of income is wife's" (Tr. 461). According to an August 5, 2008 "Plan of Care," Plaintiff was to be treated with a combination of therapy and medication management (Tr. 472-73). No functional limitations were mentioned.

On July 25, 2008, Plaintiff was examined by John Tate, M.D., at Dr. Blevins' referral

---

[2]"Tinnitus" is "a noise in the ears, as ringing, buzzing, roaring, clicking, etc." *Dorland's Illustrated Medical Dictionary* 1370 (26th ed. 1981).

8

(Tr. 359), for his complaint of tinnitus (Tr. 487). Dr. Tate attributed the tinnitus to a mild hearing loss and to noise exposure (Tr. 487). Dr. Tate instructed Plaintiff on the use of ear protection and recommended yearly audiograms (Tr. 487). No functional limitations were mentioned.

On December 10, 2008, State agency physician Aileen McAlister, M.D., opined that there was "insufficient evidence" to evaluate the severity of Plaintiff's mental impairments (Tr. 477). Dr. McAlister observed that there were no recent diagnoses from a physician or psychologist, only from a nurse and social workers (Tr. 477). Dr. McAlister stated that she needed "more current" treatment notes with good mental status examinations "to evaluate current severity" (Tr. 477).

On December 30, 2008, State agency physician Lloyd Walwyn, M.D., opined that, based on the available evidence (*see* Tr. 485), Plaintiff retained the physical ability to lift/carry 10 pounds frequently and 20 pounds occasionally, to stand/walk for 6 hours in an 8-hour work day, and to sit for 6 hours (Tr. 479). Dr. Walwyn added that Plaintiff could not climb ladders/ropes/scaffolds (Tr. 480).

On January 10, 2009, examining psychologist William O'Brien, Psy.D., evaluated Plaintiff (Tr. 499-504). Dr. O'Brien recounted Plaintiff's 3 past motor vehicle accidents (about 20 years ago) and past back surgery (Tr. 499). Dr. O'Brien noted that Plaintiff "presents himself as a very physically impaired individual" (Tr. 499), that he had been married to his 4th wife since 2008, that he had been unemployed since 2004, and that he spent a typical day watching television (Tr. 500-02). After examination, Dr. O'Brien diagnosed a moderate major depressive disorder and a panic disorder (Tr. 502). As to Plaintiff's functioning, Dr. O'Brien opined that Plaintiff appeared

> to be experiencing moderate disruption in his ability to to sustain concentration and persistence, remembering moderate to complex instructions, maintaining schedules and attendance, tolerating mild to moderate levels of stress, as well as in his ability to meet daily task of living on a consistent basis. He is able to travel independently, make plans independently of others, be aware of normal hazards and take precautions, remember and carry out simple instructions, maintain basic standards of neatness/cleanliness, and set realistic goals for himself.

(Tr. 502).

Soon afterward, on January 13, 2009, State agency physician Dr. McAlister opined that, based on the available medical evidence, Plaintiff had a major depressive disorder and a panic disorder (Tr. 508, 510). She stated that there was "[i]nsufficient evidence to evaluate severity" prior to June 30, 2008, Plaintiff's date last insured for the purposes of disability insurance benefits (Tr. 517). However, as to Plaintiff's current functioning, Dr. McAlister opined that Plaintiff was "[c]apable of understanding, remembering, and concentrating to carry out simple and low level detailed tasks" and "capable of interacting with coworkers, supervisors, and general public with some difficulty. Change in the workplace should be introduced slowly" (Tr. 521).

From August 2008 through March 2009, Plaintiff continued to be treated sporadically at Cheer Mental Health Center (Tr. 523-39). On December 31, 2008, Dr. Brock reported that Plaintiff had "not [been] seen here since July 2008 for med appt and today shows up wanting to be seen/worked in to schedule" (Tr. 534). Plaintiff said that he had not run out of medication (Zoloft) because he was taking only one-half of his prescribed dose (Tr. 534). Dr. Brock recommended "restart meds" (Tr. 535). Subsequent notes document more missed appointments (Tr. 528, 530, 532, 531, 533). On March 30, 2009, the evaluating nurse reported that Plaintiff had "not kept an appt since dec 08" (Tr. 536). He again denied running

out of Zoloft, stating that his mother had some extra (Tr. 536). Subsequent notes through June 2009 from the Volunteer Behavioral Health Center (Tr. 540-45) document more missed appointments (Tr. 544, 545 ("I have not seen this ct since the end of December"), 541).

On June 25, 2009, State agency physician Joe Allison, M.D., concurred with Dr. Walwyn's earlier December 30, 2008 opinion (Tr. 553). Dr. Allison noted that there was "no worsening, no changes, no new conditions" (Tr. 553). While additional treatment records had been requested, "none were received" (Tr. 553).

On July 20, 2009, State agency psychologist George Davis, Ph.D., concurred with Dr. McAlister's earlier January 13, 2009 opinion (Tr. 555). Dr. Davis acknowledged the more recent evidence from Cheer Mental Health Center and opined that it supported Dr. McAlister's earlier assessment (Tr. 555).

In an August 17, 2009 form report, Dr. Blevins opined that Plaintiff could lift/carry 20 pounds occasionally and less than 10 pounds frequently and could stand for 2 hours and sit for 4 hours in an 8-hour day (Tr. 555). He also opined that Plaintiff was limited in his ability to push/pull, needed to alternate sitting and standing, had pain which frequently affected his attention and concentration, was incapable of low stress jobs, could only occasionally climb/balance/kneel/crouch/crawl, and was limited in his ability to reach in all directions (Tr. 557).

According to an October 1, 2009 note from Glenn Webb, M.D., at Volunteer Behavioral Health, Plaintiff was "'doing pretty good', sleeps fair," and his "meds helped his depression a great deal" (Tr. 559). His "anxiety [was] mostly gone" but he said that he still sometimes had panic attacks (Tr. 559). No functional limitations were mentioned.

Plaintiff was treated via the White County Health Department from December 2008

through January 2010 (Tr. 564-84). On December 9, 2008, Plaintiff went to White County "to establish care" (Tr. 583-84). He complained of a skin lesion and was diagnosed with herpes zoster[3] and depression (Tr. 583-84). Subsequent treatment notes through April 2009 indicate complaints of chest pain, reflux, and an insect bite (Tr. 581, 578). He was treated via medications (*see* Tr. 581, 571). On September 16, 2009, Plaintiff denied any chest pain or muscle soreness/weakness (Tr. 573). By January 14, 2010, his diagnoses were hyperlipidemia, reflux, neuropathy, and shingles (Tr. 572). No functional limitations were mentioned.

Examining physician Michael Johnson, M.D., evaluated Plaintiff on March 13, 2010 (Tr. 585-94). Dr. Johnson noted Plaintiff's complaints of "[a]nxiety, depression, knees, feet, neck, shoulders occurring from a motorcycle accident" (Tr. 586). Dr. Johnson noted that Plaintiff "walks without [an] assistive device" was "married, with two children," and "owns his house" (Tr. 587). Dr. Johnson diagnosed "bilateral knee pain with normal range of motion and foot pain" (Tr. 588). Dr. Johnson opined that Plaintiff's functional limitations "include ascending and descending stairs or hills, prolonged sitting without frequent breaks, no bending, stooping, crawling or crouching, otherwise no limitations" (Tr. 588). In an accompanying form report, Dr. Johnson indicated that Plaintiff could, *inter alia*, lift/carry 20 pounds frequently, could not sit for more than 30 minutes at a time and could not stand or walk for more than 20 minutes at a time (Tr. 589-90). Plaintiff could also not do any stooping, kneeling, crouching, or crawling (Tr. 592).

On March 18, 2010, Plaintiff reported to Dr. Webb that his medication (Zoloft) was helping "a good bit," stating that he was not as nervous in public, was sleeping well, and had

---

[3]"Herpes zoster" is also known as shingles. *Dorland's Illustrated Medical Dictionary* 602 (26th ed. 1981).

no further panic attacks (Tr. 605).

Psychological examiner Stephen Hardison evaluated Plaintiff on March 31, 2010 (Tr. 595-603). He noted Plaintiff's complaints of depression and anxiety (Tr. 600). After examination, he diagnosed an anxiety disorder and alcohol abuse (Tr. 602). As to Plaintiff's functional limitations, he opined that Plaintiff could

> remember and carry out basic one and two-step instructions without significant problems. His ability to remember and carry out somewhat more detailed instructions would not appear significantly limited. He may have mild problems with more complex instructions. His ability to sustain concentration and persistence for extended periods of time would appear mildly to possibly moderately limited if under regular stress.

(Tr. 602-03).

Additional records from the White County Health Department document visits from September through November 2010 (Tr. 608-16). No persistent functional limitations were mentioned.

Records from Volunteer Behavioral Health from July through November 2010 show further visits with Dr. Webb (Tr. 617-22). On July 1, 2010, Plaintiff reported that his depression was better while on medication, though he was not sleeping well (Tr. 618). By November 2010, his mood remained "pretty stable," despite his ex-wife having taken his children away to South Carolina (Tr. 620).

B. *THE ADMINISTRATIVE HEARING*

At the May 19, 2011 hearing before the ALJ (Tr. 31-64), Plaintiff stated that he had an 8th grade education and that he had since obtained a GED (Tr. 39). He stated that he had custody of his children from a previous marriage (Tr. 42-43). He said that he last worked in May or June of 2004 (Tr. 39). He said that he had stopped working because problems with his

hands, feet, left arm, and low back pain (Tr. 40). He acknowledged his past back surgery and described back and hip pain since 1985 or 1987 (Tr. 41). As to his depression, he stated that he was taking medication but that he still had "bad thoughts all the time" (Tr. 42). Plaintiff testified that he spent most of his time watching television (Tr. 45).

Vocational expert witness (VE) Ernest Brewer appeared and testified at the hearing (Tr. 58-63). The ALJ asked the VE to consider the following functional limitations:

> [L]imited to a range light work, he should not do anymore than occasional climbing, stooping, balancing, or kneeling, but he could stand to walk up to six hours out of an eight hour day, and sit up to six hours out of an eight hour day. He would have limitations such that he shouldn't be required more than frequent, reaching, handling, feeling, grows from a place that's using either of his hands, and take them back with his left hand, and he would have limitations in the psychological area, ... mild limits in his ability to remember and carry out judgments and complex work related situations, no limitations, specifically on detail, simple, but he would have a mild to moderate limitation in his ability to deal with the public, mild limitation in his ability to interact with supervisors mild to moderate limitation in his ability to deal with co-workers[.]

(Tr. 59-60). The VE testified that an individual with such limitations could perform work as a cashier (21,000 jobs in Tennessee, 340,000 nationally), food preparer (14,000 in Tennessee, 298,000 nationally), hand packer tag type work (7,700 jobs in Tennessee, 156,000 nationally) (Tr. 60-61).

The ALJ then asked the VE to consider the following functional limitations (based, in part, on Dr. Blevin's opinion):

> [L]imited to a range of light work, ... reduced by a fact that he could not stand or walk more than two hours out of an eight hour day, or sit more than four hours out of an eight hour day, in addition, he would have–shouldn't do any more than occasional climbing, balancing, crouching, crawling. Apparently, he has limitations of some kind in directional, I mean, in reaching, ... it's just

14

> occasional, and he should avoid concentrated exposure to temperature
> extremes, dust, vibration, humidity, work hazards, dust fumes, smoke, dust
> gases and perfumes, solvents, cleaners, fluxes, and he should avoid even
> moderate exposure to cigarettes because of the chemicals[.]

(Tr. 62). The VE testified that there were no jobs for an individual with such limitations (Tr. 62-63).

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

#### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also

16

Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff raises two points of error from the ALJ's decision: (1) the ALJ erred in applying Dr. Blevins' opinion as of August 17, 2009, the date of the opinion and not before; and (2) the ALJ erred in rejecting the credibility of plaintiff's subjective pain complaints prior to August 17, 2009. The undersigned finds no error in either instance, and concludes that the ALJ's decision deserves to be affirmed.

Plaintiff argues that the ALJ, in crediting the August 17, 2009 opinion of Dr. Blevins and establishing that date as the date of disability onset, failed to account for the fact that the 2009 opinion, expressed on an agency Medical Source Statement (MSS) form, was based on a physical examination performed on July 15, 2008 (Tr. 355-61) -- the one and only

17

note of treatment by Dr. Blevins in the medical record.[4] Plaintiff contends that the 2009 assessment was "clearly" based on the July 2008 examination, that the restrictions noted therein were present prior to plaintiff's date last insured of June 30, 2008, and that "[t]here was no increase in his reported problems or in intensity of his pain and conditions reported between January of 2007 and August of 2009." (Docket Entry No. 18 at 22) However, there is no explicit reference in the MSS to the 2008 examination, nor in most instances is there any explanation of the clinical findings that support the opinions given in the MSS. It is at least possible that other, unnamed and more contemporaneous items were considered by Dr. Blevins in rendering the 2009 checkbox assessment of plaintiff's physical ability to engage in work-related activities.

Moreover, the other opinion evidence supports the ALJ's drawing of the line of demarcation at the date of the MSS. In particular, the December 30, 2008 assessment of Dr. Lloyd Walwyn, which supports a finding of nondisability and to which the ALJ gave significant weight (Tr. 22), considered Dr. Blevins' 2008 examination report as among the items which *partially* supported the credibility of plaintiff's complaints. (Tr. 485) Meanwhile, the March 2010 opinion of consultative examiner Michael David Johnson, M.D., assigned restrictions which the vocational expert deemed incompatible with sustained work performance. (Tr. 61-62) It appears that based on this expert testimony and the relative proximity of Dr. Blevins' more restrictive MSS to Dr. Johnson's assessment, the ALJ found plaintiff's onset of disability to be established as of the earlier date of August 17, 2009.

---

[4]Plaintiff states that the note of this "new patient" office visit is one of two prior evaluations by Dr. Blevins, but does not cite to the other evaluation in support of his argument, or anywhere in his brief. It appears that Dr. Blevins' other evaluation of plaintiff occurred in 2005, when he performed a consultative examination. (Tr. 131)

Substantial evidence supports this decision. The ALJ was not bound to further extend the reach of this disability finding by reference to an earlier treatment note which was not explicitly incorporated by the MSS, and which had already, by association, been considered as supporting a finding that plaintiff was limited to a range of light work, but not disabled. Plaintiff's argument to the contrary is without merit.

Next, plaintiff argues that the ALJ erroneously discounted the credibility of his subjective complaints of disabling pain. In support of this argument plaintiff cites to his hearing testimony to a very limited range of daily activities, as well as his consistent description of his constant pain in testimony before the ALJ and in statements given to his treating and examining doctors. However, as the ALJ noted, "[h]e had noted improvement in his back pain with medications and injections. His medications were being tapered off in January 2008." (Tr. 21) Moreover, the diagnostic test results on his left foot and toes were normal, and only a mild to moderate degree of degenerative disc disease was revealed on lumbar spine films. Id. With regard to daily activities, it appears that during the pertinent time period plaintiff was able to engage in household chores so long as he paced himself, and was also able to cut the grass with a riding mower and shop for limited quantities of food or other items. (Tr. 502) He was also able to attend church, sit and watch birds, occasionally go out on a friend's pontoon boat, and walk a bit for exercise. (Tr. 43-45) He spent most of his time watching television, and was able to sit while watching television until he would "get impatient [and] have to get up and move around." (Tr. 45) The ALJ's credibility determination, which is due considerable deference on judicial review, e.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003), is well supported and was not arrived at

19

erroneously. Based on the substantial evidence noted above, the undersigned finds no error in the ALJ's decision that, prior to August 17, 2009, plaintiff's impairments and symptoms limited him significantly -- leaving him capable of only a reduced range of light work -- but were not disabling.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 28th day of October, 2014.

 s/ John S. Bryant
JOHN S. BRYANT
UNITED STATES MAGISTRATE JUDGE